**IN THE UNITED STATES DISTRICT COURT**

**FOR THE DISTRICT OF NEW MEXICO**

**ALEJANDRO C. MARTINEZ,**

 **Plaintiff,**

**v.**                   **No. CIV 07-1126 RB/CEG**

**UNITED STATES BORDER PATROL,**
**MARCIO NUNEZ, KENNETH J. PARKS,**
**STEVEN A. HIGGS, PETER R. MORAN,**

 **Defendants.**

**MEMORANDUM OPINION AND ORDER**

  **THIS MATTER** comes before the Court on Defendants United States Border Patrol Agents Marcio Nuñez's, Kenneth J. Parks', and Steven A. Higgs' Motion to Dismiss Plaintiff's Complaint Based on Qualified Immunity, filed May 19, 2008 (Doc. 36); on their Motion to Strike Plaintiff's "Replies", filed July 2, 2009 (Doc. 44); and, because pro se Plaintiff Alejandro Martinez is proceeding *in forma pauperis*, *see* Doc. 3, on the Court's authority under 28 U.S.C. § 1915(e)(2)(B) to dismiss a claim at any time if it is frivolous or "fails to state a claim on which relief may be granted." *See Trujillo v. Williams*, 465 F.3d 1210, 1216 & n.5 (10th Cir. 2006) (noting that the Supreme Court has held that § 1915 "accords judges not only the authority to dismiss a claim based on an indisputably meritless legal theory, but also the unusual power to pierce the veil of the complaint's factual allegations and dismiss those claims whose factual contentions are clearly baseless," and stating that dismissal of claims that are frivolous, that fail to state a claim, or that are brought against immune defendants is mandatory) (internal quotation marks omitted).

  The individual Defendants all are federal law-enforcement officers. The Court will first address the Defendants' assertion that all claims based on 42 U.S.C. § 1983 must be dismissed

because § 1983 only proscribes a deprivation of civil rights under color of state law. The Court agrees. "Section 1983 has no application to federal officers acting pursuant to federal law." *Kite v. Kelley*, 546 F.2d 334, 337 (10th Cir. 1976). But, as noted by the Defendants, the Court may, and should, construe Mr. Martinez's Complaint as a claim for violation of his constitutional right to be free from excessive force during an arrest brought under *Bivens v. Six Unknown Fed. Narcotics Agents*, 403 U.S. 388, 398 (1971) (holding that federal officials may be held individually liable for constitutional violations to the same extent as state officials under 42 U.S.C. § 1983). *See Tripati v. United States I.N.S.*, 784 F.2d 345, 346 n.1 (10th Cir. 1986). The Court will dismiss the claims brought under § 1983.

Although the Defendants' motion is captioned as one for dismissal based on qualified immunity, their brief references summary judgment standards, *see* Doc. 39 at 6-8, and they have submitted affidavits to establish their right to judgment. (*See id.*, Exs. 1-3.) Thus, the Court converts the motion to dismiss to a motion for summary judgment. *See Lowe v. Town of Fairland, Okla.*, 143 F.3d 1378, 1381 (10th Cir. 1998) (noting that a motion to dismiss "must be converted into a motion for summary judgment whenever the district court considers matters outside the pleadings").

Summary judgment should be granted "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c); *see Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986). The moving party "always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' which it believes demonstrate the

absence of a genuine issue of material fact." *Celotex*, 477 U.S. at 323 (quoting Fed. R. Civ. P. 56(c)). As the Supreme Court explained almost forty years ago in *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 160-61 (1970), the burden on the non-moving party to respond arises only if the summary judgment motion is properly supported as required by Rule 56(c). Thus, summary judgment is "appropriate" under Rule 56(e) only when the moving party has met its initial burden of production under Rule 56(c). If the moving party's evidence produced in support of the summary judgment motion does not meet this burden, "summary judgment must be denied *even if no opposing evidentiary matter is presented.*" *Id.* at 160 (italics in original) (quotation marks omitted); *see Reed v. Nellcor Puritan Bennett*, 312 F.3d 1190, 1195 (10th Cir. 2002) (holding that a district court may not grant a motion for summary judgment "without first examining the moving party's submission to determine if it has met its initial burden of demonstrating that no material issues of fact remain for trial and the moving party is entitled to judgment as a matter of law. If it has not, summary judgment is not appropriate for no defense to an insufficient showing is required.") (quotation marks and bracket omitted).

When, as here, a defendant raises qualified immunity as an affirmative defense on a motion for summary judgment, "the plaintiff bears the heavy two-part burden of demonstrating that (1) the defendant violated a constitutional right and (2) the constitutional right was clearly established at the time of the alleged conduct." *Reeves v. Churchich*, 484 F.3d 1244, 1250 (10th Cir. 2007), *abrogated in part on other grounds by Pearson v. Callahan*, 129 S. Ct. 808, 818 (2009). In resolving the issues, the Court must "view the evidence and draw reasonable inferences therefrom in the light most favorable to the nonmoving party." *Id.* (internal quotation marks omitted). But, "although [the court] will review the evidence in the light most favorable to the nonmoving party . . . the record must clearly demonstrate the plaintiff has satisfied his heavy two-part burden;

3

otherwise, the defendants are entitled to qualified immunity." *Holland ex rel. Overdorff v. Harrington*, 268 F.3d 1179, 1186 (10th Cir. 2001) (internal quotation marks omitted). If, on the other hand, the plaintiff meets this burden, the defendant must then satisfy the usual summary-judgment standards of showing that no material facts are in dispute and that he is entitled to judgment as a matter of law. *See id.; Olsen v. Layton Hills Mall*, 312 F.3d 1304, 1312 (10th Cir. 2002).

Here, Mr. Martinez contends that Agent Parks used excessive force *after* Mr. Martinez was arrested and handcuffed. His complaint alleges the following sequence of events.

Mr. Martinez was stopped at a border-patrol checkpoint. (Complaint at 2.) Nuñez asked Mr. Martinez routine questions about his citizenship, and Mr. Martinez "complained of [Nuñez's] accent and answered I was more American than he." (*Id.*) When Nuñez asked what Mr. Martinez had in his truck, instead of giving a responsive answer, Mr. Martinez got out of the truck and "told him he could have the truck and check it himself." (*Id.*) Parks then came out of the Border Patrol building and asked Mr. Martinez, "what's going on, bud?," to which Mr. Martinez responded, "ask this fool." *Id.* Nuñez motioned Mr. Martinez to come toward him and asked "are you American?" (*Id.*) Mr. Martinez responded, "I already told you – more than you; I don't have an accent." (*Id.*) Mr. Martinez swears that "[Nuñez] made body contact first," *id.* at 5, by "t[aking] both hands to [Martinez's] shoulders and thr[owing him] against [his side-view] mirror [and] telling [him] to get back in [his] vehicle." *Id.* at 2. In response, Mr. Martinez immediately "threw a punch." (*Id.* at 3.) Parks then grabbed Mr. Martinez's right arm and pulled it upwards and to the back of his head while Nuñez pushed his face down "to the hood of [the] truck." (*Id.*) Parks "ask[ed Martinez] for his left hand to cuff" him. (*Id.*) Agents Parks and Nuñez kicked Mr. Martinez's legs and "stomped" his feet until they pushed his feet out from under him. (*Id.*) Agent Parks then "knocked [him] to the ground,

4

injuring [his] right shoulder and left forehead." *Id.* Agent Parks "slammed [Martinez's] head into the pavement twice more when [Martinez] tried to get up [be]cause [he] told them [he] could not breath [sic] in the blood." (*Id.*) Mr. Martinez's claim for Count I of his Complaint is that he was "beaten after handcuffed." (*Id.* at 4.)

Count II of Mr. Martinez's Complaint alleges that his vehicle was damaged and his phone was broken. (*See id.*) The Court construes this as a claim for negligence under the Federal Tort Claims Act. The Defendants have not addressed Count II in their motion to dismiss or for summary judgment.

Agent Nuñez's and Agent Parks' affidavits add more detail to the above-described events. Nuñez states that, when Mr. Martinez got out of his truck, he did so in an "aggressive and argumentative fashion with no provocation;" that Mr. Martinez "stood very close to [Nuñez] in an unsafe and threatening manner;" and that Nuñez could smell "a strong odor of alcohol on Mr. Martinez's breath." (Doc. 37, Ex. 1 at 2.) Nuñez told Mr. Martinez to get back in his truck, but he "failed to comply." (*Id.*) Nuñez states that Parks was unable to calm Mr. Martinez down, and that Parks asked Mr. Martinez if he "wanted to file a complaint or talk to a supervisor." (*Id.*) Agents Nuñez and Parks both swear that Mr. Martinez then pushed Nuñez and hit him "with a closed fist," causing a contusion and "intense pain." (*Id.*; *Id.* Ex. 2 at 2.) Both officers state that, when they took Mr. Martinez to the ground to handcuff him and prevent further assault, using only the force necessary to subdue him, Mr. Martinez suffered an unintentional cut or abrasion on his face, and that they immediately sought medical treatment for Mr. Martinez. (*See id.*)

Agent Higgs' affidavit states that he was overseeing the checkpoint only in a supervisory capacity, and that he "was not present at the incident and did not have direct contact" with Mr. Martinez. (Doc. 37, Ex. 3 at 2.)

Mr. Martinez failed to respond to the Agents' affidavits that added more detail by submitting a sworn affidavit. Instead, he submitted an unsworn letter, which the Court construes as a response, adding more facts to his story and contending that Nuñez and Parks were lying in unspecified ways. In his letter, Mr. Martinez states that, when Nuñez motioned for Mr. Martinez to come toward him, Mr. Martinez said, "what do you want now?" (Doc. 38 at 1.) He admits that he "refused to give [Parks] his left arm," when Parks asked for it so that he could handcuff him, however, and admits that, as the officers took him to the ground, his face "hit on the lugs and wheel" of his truck. (*Id.*) Although the Defendants contend that the Court cannot consider unsworn allegations in resolving summary judgment motions and seek to strike Mr. Martinez's sur-reply, they have cited Mr. Martinez's unsworn admissions as support for their position. The Court will not strike Mr. Martinez's sur-reply, but has considered it only in determining whether Mr. Martinez should be given an opportunity to amend his Complaint.

In reviewing the undisputed allegations in the Complaint, in Mr. Martinez's response, and in the Agents' affidavits, the Court concludes that, although his Complaint describes the whole incident, Mr. Martinez's only claim for excessive force regards the unnecessary and excessive force that he contends Parks used by slamming his head into the ground twice after Mr. Martinez was prone and handcuffed. (*See* Complaint at 3, Count I ("I was beaten after handcuffed").)

If, however, Mr. Martinez also intended to make a claim for excessive force regarding the force used before he was handcuffed, the Court would conclude, as a matter of law, that the Agents are entitled to qualified immunity because their actions were objectively reasonable under the circumstances. *See Graham v. Connor*, 490 U.S. 386, 395 (1989) (holding that "*all* claims that law enforcement officers have used excessive force – deadly or not – in the course of an arrest, investigatory stop, or other 'seizure' of a free citizen should be analyzed under the Fourth

6

Amendment and its 'reasonableness' standard . . . .") (italics in original).  The proper application of the "reasonableness standard"

> requires careful attention to the facts and circumstances of each particular case, including the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether he is actively resisting arrest or attempting to evade arrest by flight.
>
> The "reasonableness" of a particular use of force must be judged from the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight. . . . . With respect to a claim of excessive force, the same standard of reasonableness at the moment applies: "Not every push or shove, even if it may later seem unnecessary in the peace of a judge's chambers," *Johnson v. Glick*, 481 F.2d, at 1033, violates the Fourth Amendment.  The calculus of reasonableness must embody allowance for the fact that police officers are often forced to make split-second judgments – in circumstances that are tense, uncertain, and rapidly evolving – about the amount of force that is necessary in a particular situation.

*Id.* at 396-97 (citations omitted).

The first contact Mr. Martinez complains of – that Agent Nuñez pushed him while telling him to get back into his truck – is not sufficiently serious to constitute excessive force under the circumstances of this case, where it is undisputed that: (i) Nuñez could tell that Mr. Martinez had been drinking, (ii) Mr. Martinez was acting in an aggressive, verbally belligerent, and hostile manner; (iii) Mr. Martinez had refused to obey the Agents' previous orders to get back into his truck; and (iv) Mr. Martinez stood too close to Nuñez in what Nuñez reasonably perceived as an unsafe and threatening manner after Mr. Martinez called Nuñez a "fool" and asked "what do you want now."  *See Graham*, 490 U.S. at 396 ("Our Fourth Amendment jurisprudence has long recognized that the right to make an arrest or investigatory stop necessarily carries with it the right to use some degree of physical coercion or threat thereof to effect it.").

It is further undisputed that Mr. Martinez punched Agent Nuñez and then actively resisted arrest by refusing to obey Agent Parks' order to give him his left hand so that Parks could handcuff

7

him, thereby escalating the physical violence and warranting the more extreme measures of kicking Mr. Martinez's feet from under him to get him down and under control.  *See United States v. Montoya de Hernandez*, 473 U.S. 531, 542 (1985) ("Authorities must be allowed to graduate their response to the demands of any particular situation.") (internal quotation marks omitted). Under these circumstances, as a matter of law, the Agents' use of force was objectively reasonable.  And because it is undisputed that Mr. Martinez accidentally hit his face on the truck's wheel during the struggle to get him to the ground, that injury alone does not establish objective unreasonableness. *See Giannetti v. City of Stillwater*, Nos. 06-6085, 06-6094, 216 Fed. Appx. 756, 766, 2007 WL 441887, **10 (10th Cir. Feb. 12, 2007) (agreeing with the Seventh Circuit that "the mere fact that an injury occurred while an individual was in police custody is not sufficient to avoid summary judgment – a plaintiff must identify the specific unreasonable conduct that caused his or her injuries") (internal quotation marks omitted).

But Mr. Martinez's Complaint alleges, and the Agents' affidavits do not mention or address, that *after* Mr. Martinez was subdued and handcuffed on the ground, Parks slammed his head into the ground twice for no good reason, which establishes a prima facie case of constitutionally-excessive force that has long been recognized in this Circuit.  *See Dixon v. Richer*, 922 F.2d 1456, 1463 (10th Cir. 1991) (stating that a post-arrest kicking, beating, and choking of plaintiff would be constitutionally excessive if the plaintiff had made no additional "aggressive moves or threats" toward officer after being subdued).  The burden thus shifted to Agent Parks to present evidence that no genuine issue of material fact existed on that claim, but because Agent Parks has not challenged this claim of excessive force, he has not met his initial burden on summary judgment and judgment must be denied.  *See Adickes*, 398 U.S. at 160-61; *Olsen*, 312 F.3d at 1314 ("[T]his court will not approve summary judgment in excessive force cases – based on qualified immunity or otherwise

– if the moving party has not quieted all disputed issues of material fact."); *Gouskos v. Griffith*, No. 03-5133, 122 Fed. Appx. 965, *976, 2005 WL 375858, **10 (10th Cir. Feb. 17, 2005) (reversing grant of summary judgment on issue of qualified immunity because officer failed to address plaintiff's claims that the officer "used excessive force by choking him almost to unconsciousness after [the plaintiff] stopped struggling and by stomping on his back after he was totally subdued").

Qualified immunity must be denied in this case as to Agent Parks because there are genuine issues of material fact concerning what he did after Mr. Martinez was handcuffed and subdued, and these issues of fact go to the objective reasonableness of Agent Parks' conduct. *See Olsen*, 312 F.3d at 1314. Summary judgment should be granted as to Agent Nuñez, however, because the Complaint does not allege that Nuñez participated in the post-handcuffing head-slamming.

Summary judgment must also be granted to Agent Higgs because there are no genuine issues of material fact regarding his lack of involvement in the altercation and he has apparently been sued only because he was a supervisor at the checkpoint. Mr. Martinez has included no allegations in his Complaint regarding Agent Higgs. *See Meade v. Grubbs*, 841 F.2d 1512, 1527 (10th Cir. 1988) (noting that "[a] supervisor is not liable [for deprivation of constitutional rights] unless an affirmative link exists between the constitutional deprivation and either the supervisor's personal participation, his exercise of control or direction, or his failure to supervise") (internal quotation marks and bracket omitted). Here, Mr. Martinez does not allege that Agent Higgs or any other supervisor or officer personally participated in, directed, or observed Parks physically assaulting Mr. Martinez after he was handcuffed. *See Steele v. Fed. Bureau of Prisons*, 355 F.3d 1204, 1214 (10th Cir. 2003) ("[D]irect, personal participation [is] required to establish *Bivens* liability."), *abrogated on other grounds by Jones v. Bock*, 549 U.S. 199 (2007).

Although Mr. Martinez has named Peter R. Moran as a defendant, his Complaint also does

9

not otherwise mention Moran, and he has failed to state a claim against him.[1]  As Mr. Martinez is proceeding IFP, the Court must dismiss the claims against Moran under § 1915(e)(2)(B) because amendment would be futile.  Similarly, the Court also will dismiss claims for excessive force against the United States Border Patrol because a *Bivens* action is directed only against federal officers acting in their personal or individual capacities.  *See id.* ("A *Bivens* claim cannot be brought against . . . a federal agency or other defendants in their official capacities.")

In conclusion, the only viable claim for excessive force for the alleged post-handcuffing head-slamming under *Bivens* that remains is against Agent Parks.  The Defendants have not moved for summary judgment or for dismissal on Count II, and that claim also remains.

**IT IS ORDERED** that Defendants Nuñez's, Parks', and Higgs' Motion to Dismiss or for summary judgment (Doc. 36) is GRANTED in part and DENIED in part and that their Motion to Strike (Doc. 44) is DENIED;

**IT IS FURTHER ORDERED** that all § 1983 claims are DISMISSED and that all *Bivens* claims for excessive force against the United States Border Patrol and Agents Nuñez, Higgs, and Moran are DISMISSED with prejudice.

_____
**ROBERT C. BRACK**
**UNITED STATES DISTRICT JUDGE**

---

[1] The Court notes that Mr. Martinez does not attempt to allege any further facts regarding Agent Higgs or Agent Moran in either of the two documents filed after the Defendants filed their motion to dismiss, and because only Agents Nuñez and Parks were involved in the altercation, the Court does not offer Mr. Martinez an opportunity to amend his Complaint because it would be futile.